UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS E. BALLARD,<br><br>           Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration,<br><br>           Defendant. | NO. EDCV 03-181-MAN<br><br>MEMORANDUM OPINION<br><br>AND ORDER |

Plaintiff filed a Complaint on February 25, 2003, seeking review of the denial by the Social Security Commissioner ("Commissioner") of supplemental security income benefits ("SSI"). On April 14, 2003, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c). On July 18, 2003, the action was remanded to the Commissioner, pursuant to the parties' stipulation. On July 20, 2004, the case was reopened, again pursuant to the parties' stipulation. The parties filed a Joint Stipulation on November 1, 2004, in which: Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the case to

the Commissioner with directions; and Defendant requests that the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on December 2, 1999. (Administrative Record ("A.R.") 71-77.)  Plaintiff claims to have been disabled since February 20, 1998, due to lower back problems and related pain, as well as chronic strain and sprain of the neck with headaches. (A.R. 74, 24.)  He has past relevant work experience as a clerical worker, office sales manager, owner/vice president of an accounting firm, and home/apartment maintenance man.  (A.R. 23.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On June 19, 2001, Plaintiff, who was represented by counsel, appeared personally and testified at a hearing before Administrative Law Judge ("ALJ") William Churchill.  (A.R. 37-57.)  On August 2, 2001, the ALJ denied Plaintiff's request for benefits, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 22-27, 5-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his August 2, 2001 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 28, 1998.  (A.R. 26.)  The ALJ further found that Plaintiff had "severe" physical impairments, consisting of

"residuals of chronic sprain/strain of the neck and lower back, status post rear-ending motor accident February 1998, with MRI findings of normal or, at most, a mild degree of degenerative disc disease consistent with his younger age of 38." (*Id.*)  The ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)  The ALJ found that Plaintiff's testimony regarding his impairments was "not totally credible in view of his activities of daily living and minimal need for treatment." (A.R. 24, 26.)  In addition, the ALJ found that Plaintiff had the residual functional capacity to perform at least a wide range of work at the "light" level.[1]  (A.R. 26.)  The ALJ found that Plaintiff's residual functional capacity did not preclude the performance of his past relevant work as a clerical worker and accountant, as well as making a successful vocational adaptation to other work according to the Medical-Vocational Guidelines (the "Grids"), Rule 202.19, Table No. 2., Regulations No. 16.[2]  (*Id.*)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (A.R. 27.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine

---

[1] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[2] Under Rule 202.19, a person who is a "younger" individual, with "limited or less" education, who is "skilled or semi-skilled" with "transferable" skills, is not disabled.

whether it is free from legal error and supported by substantial evidence. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges four issues. <u>First</u>, Plaintiff contends that the

ALJ improperly disregarded the opinions of his treating physicians. <u>Second</u>, Plaintiff contends that the ALJ failed to assess his credibility properly. <u>Third</u>, Plaintiff contends that the ALJ erred in finding that Plaintiff's ailments did not meet or equal a listed impairment. <u>Fourth</u>, Plaintiff contends that the ALJ erred in failing to elicit testimony from a vocational expert. (Joint Stip. at 2.)

**A.  The ALJ Failed To Properly Assess The Opinions From Plaintiff's Treating Physicians.**

Ordinarily, the opinions of a treating physician should be given great, if not controlling, weight. *See* Social Security Ruling 96-2p. When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating physicians' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

Here, the ALJ discussed the evidence provided by Dr. Ian Brodie, an orthopedic surgeon who treated Plaintiff, as follows:

> On July 15, 1998, Ian Brodie, M.D., an orthopedic surgeon, reported [Plaintiff] had been rushed to [an] emergency

>hospital after being rear-ended in an automobile accident, was physically examined but no x-rays taken, and was give[n] Soma, a muscle relaxant medication. Dr. Machado [Plaintiff's chiropractor] obtained x-rays for neck and back, which were negative, and prescribed 40 treatments of physical therapy at which time [Plaintiff] was thought to have reached a plateau. [Plaintiff] complained of constant pain in the muscles and interspinous ligaments of the neck with symptoms tending to get worse towards the end of the day when he is tired and fatigued. There is increasing pain with rotational movements of the head and neck while driving or with reaching, pushing, pulling and lifting activities, especially with the right arm or above shoulder level. He experienced occasional tingling and numbness in the fingers of both hands. He suffers from tension headaches approximately twice weekly. He also experienced pain in the lower back and left hip region increasing with activity. There was no evidence of impingement syndrome of the rotator cuff of either shoulder; shoulders were stable to clinical testing; neurological evaluation was normal; [and Plaintiff] could walk on heel and toe. The diagnosis was resolving musculoligamentous right-sided neck strain with headaches, an continuing strain/sprain of the lower back, left buttock, left hip and left sacroiliac joint (Exhibit 2F).

(A.R. 24.)

The ALJ relied upon the January 18, 2000 report of Dr. Frederick J.

Lieb, a consultative orthopedic surgeon, and summarized his report, as follows:

> [Plaintiff] appeared to be in neither acute nor chronic distress, moving freely about. There was no objective evidence of organic pathology involving the musculoskeletal systems or spinal axis. [Plaintiff] "had at most a mild degree of degenerative disc disease consistent with his age of 38 years." In Dr. Lieb's opinion, he had no impairment related physical limitations (Exhibit 4F).

(A.R. 24.)

The ALJ also relied upon a February 1, 2000 report of a state agency physician, who found that Plaintiff was capable of performing "at least medium exertional work activity in view of his complaints of some diminished back range of motion and the MRI findings of a mild disc bulge." (A.R. 24.) The ALJ also noted that January 16, 2001 x-rays showed "only narrowing of the posterior L5-S1 disc space, and no subluxation." (*Id.*)

Plaintiff contends that the ALJ failed to properly assess the medical records and opinions from his treating physicians, and disregarded medical evidence in the file. (Joint Stip. at 3-5.)

Here, in an October 7, 1998 report, Dr. Brodie found that Plaintiff was "unable to work." (A.R. 163-64.) Dr. Brodie subsequently found, in an October 27, 1998 report, that Plaintiff: could "occasionally" walk,

7

bend, squat, reach above the shoulder level, reach below shoulder level, or work at heights, and could "never" kneel, twist, climb, lift more than 20 pounds, or carry more than 20 pounds. (A.R. 156, 160.) Dr. Brodie further noted in this report that he would "release [Plaintiff] to return to [his] regular or customary work" on December 2, 1998. (A.R. 156.) On December 2, 1998, Dr. Brodie noted that: Plaintiff had "reached a permanent plateau of recovery with a residual disability"; it was probable that Plaintiff would suffer a flare-up within the next six to nine months which would require further orthopedic reevaluation; and there were other options for treatment, including epidural injections and acupuncture. (A.R. 138-39.) Dr. Brodie recommended that Plaintiff continue wearing a back brace for lumbosacral support; and he reported that Plaintiff had not benefitted from chiropractic adjustments. (*Id*.) However, Dr. Brodie did not opine as to Plaintiff's limitations in this last report, and Dr. Brodie evidently stopped treating Plaintiff in 1998, as the record does not contain any further records from Dr. Brodie after December 1998. At a minimum, the ALJ erred by failing to address the postural limitation provided in Dr. Brodie's October 27, 1998 report, much less provide specific and legitimate reasons for rejecting such limitations.[3]  Lester, 81 F.3d at 830.

---

[3] Although the ALJ was not required to accept Dr. Brodie's ultimate determination of disability (Batson v. Commissioner, 359 F.3d 1190, 1194-95 (9th Cir. 2004)(quoting Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)), his October 7, 1998 opinion that Plaintiff was "unable to work" clearly suggests that Plaintiff's limitations were much greater than those found by Dr. Lieb or the state agency physicians upon whom the ALJ relied. Furthermore, in a March 23, 1998 report, Kim Machado, D.C., Plaintiff's chiropractor, found that Plaintiff had certain limitations on walking, standing, sitting, bending, stooping, lifting, pushing, pulling, climbing, reaching, gripping, kneeling, and balancing. Although these findings are not binding on the ALJ (20 C.F.R. §§ 404.1513(a), 416.913(a)), they, too, lend further support to the limitations found by Dr. Brodie. *See* Delyria v. Shalala, 856 F.

In addition, although the ALJ noted a January 16, 2001 x-ray which showed "only narrowing of the posterior L5-S1 disc space, and no subluxation" (A.R. 24, *see also* A.R. 298), the ALJ failed to discuss Dr. Brodie's findings regarding the September 5, 1998 MRI showing "L5-S1 mild to moderate central disc bulge with mild thecal sac effacement and disc desiccation." Dr. Brodie found that the conditions reflected on that MRI "would account for [Plaintiff's] persistent symptoms in the lower back" (A.R. 140), and the MRI evidently provided the basis for his October 7, 1998 opinion that Plaintiff was "unable to work" (A.R. 162 -- Dr. Brodie's September 2, 1998 report noting that his "conclusions [were] not immediately available" and "[a]dditional information [was] needed," specifically an MRI, before he could determine whether Plaintiff could work; 163-64 -- Dr. Brodie's October 7, 1998 opinion that Plaintiff was "unable to work"). To the extent that the record is not clear as to the period of time during which Plaintiff's limitations persisted, the ALJ should further develop the record by contacting Dr. Brodie to resolve that issue. *See* Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel); 20 C.F.R. § 416.912(e) (duty to re-contact treating physician); Thomas v. Barnhart,

Supp. 1432, 1441-42 (D. Or. 1994)(remanding case and suggesting that ALJ use chiropractor's findings in understanding how claimant's impairment affects her ability to work). In addition, although the periods of the "temporary disability" noted by Plaintiff's treating doctors at San Bernardino County Hospital from June 7, 2002, to September 27, 2002, and from October 21, 2002, to January 21, 2003 (A.R. 283, 365), address a time period after the ALJ's August 2, 2001 written decision, they suggest that Plaintiff had greater limitations than those found by the ALJ. Moreover, the opinions from Dr. Machado and Plaintiff's treating doctors at Los Angeles County suggest the need for the ALJ to further develop the record by contacting Dr. Brodie, or one of Plaintiff's treating doctors at Los Angeles County, regarding Plaintiff's precise limitations following his February 20, 1998 alleged onset date through August 2, 2001, the date of the ALJ's written decision.

9

278 F.3d 947, 956-57, 959 (9th Cir. 2002)(requirement in 20 C.F.R. § 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability).

Plaintiff also contends that the ALJ failed to assess limitations arising from his rib fracture, bronchitis, or asthma with bronchitis. (Joint Stip. at 3-4.)  Records from Los Angeles County show that Plaintiff fractured his right rib in 1994, but they do not show that Plaintiff suffered any continuing discomfort or limitations from this injury after February 20, 1998, his claimed onset of disability. (A.R. 253 -- November 2, 1994 progress notes diagnosing Plaintiff with rule out fracture of the right ribs; 281 -- November 2, 1994 x-ray showing "[u]ncomplicated and nondisplaced right tenth rib fracture anteriorly"; 278 -- September 19, 1996 chest x-ray showing "[a]n old healed rib fracture is present in the right side, involving the tenth lateral rib"; 304 -- January 26, 1996 right rib x-ray showing "normal right ribs.") Records from Los Angeles County, dated after 1998, show that Plaintiff suffered from asthma with bronchitis and bronchitis, had symptoms of wheezing and coughing, and was told to stop smoking, but noted no limitations arising from his asthma with bronchitis or bronchitis. (*See* A.R. 238 -- December 30, 1999 progress notes noting wheezing and diagnosing bronchitis; 244 -- February 25, 1998 progress notes recommending Plaintiff to stop smoking and noting that Plaintiff was coughing and a chronic smoker; 314 -- August 29, 2000 progress notes diagnosing Plaintiff with asthma with bronchitis.)  In addition, Plaintiff did not claim bronchitis, asthma with bronchitis, or limitations arising from his 1994 rib fracture as impairments in his

application papers, nor did he testify as to any limitations flowing from these impairments at the June 19, 2001 hearing. (A.R. 38-57.) *See* Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)(claimants must raise issues at their administrative hearings in order to preserve them on appeal to a district court). Nevertheless, as this case is being remanded, the ALJ should reconsider whether these impairments impact Plaintiff's residual functional capacity and seek further clarification, if necessary, from Plaintiff's doctors regarding these impairments.

Because the ALJ must reconsider the records of Plaintiff's treating doctors and may need to further develop the record on remand, the Court does not reach Plaintiff's argument that the ALJ failed to find that Plaintiff's impairments did not meet or equal a listed impairment. After reconsidering and/or developing the record with respect to the opinions and conclusions regarding Plaintiff's limitations, the ALJ should consider whether Plaintiff's combined impairments meet or equal a listed impairment. Even if any one of these impairments does not meet the criteria specified in the listings, the ALJ must find that Plaintiff was disabled during the claimed period if the combination of Plaintiff's impairments was medically equal to any listed impairment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); Lewis, 236 F.3d at 514.

**B.    The ALJ Improperly Assessed Plaintiff's Credibility.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the

severity of his or her pain may not be discredited based solely on a lack of objective medical evidence to corroborate the allegations. Tonapetyan, 242 F.3d at 1147-48; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1985). As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals. Bunnell, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Light, 119 F.3d at 792. In determining whether a claimant's testimony regarding the severity of his symptoms is

credible, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Ceguerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.") When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain or symptom testimony is not credible and what evidence suggests that the complaints are not credible. *See* Swenson v. Sullivan, 876 F.2d 683, 688 (9th Cir. 1979).

In rejecting Plaintiff's credibility, the ALJ simply found that "[Plaintiff's] allegations regarding his limitations are not totally credible in view of his activities of daily living and minimal need for

treatment." (A.R. 26.)

Plaintiff testified that: he becomes "tearful" at least three times a week due to his pain (A.R. 41); he experiences tingling and throbbing pains in his back which extend into his legs past his kneecaps (A.R. 45-46); his left leg will buckle which causes him to fall (A.R. 46); he cannot walk or stand for an hour due to his pain (A.R. 47); he uses a cane to get out of bed in the mornings (*id.*); he experiences muscle spasms mainly in his back into the left hip and leg (*id.*); he experiences numbness in the back, hip, and left leg (A.R. 50); and he can sit only about an hour (*id.*). With respect to his daily activities, Plaintiff testified that: his sister cooks for him when he is experiencing pain; he does his own laundry; he tries to wash his own dishes; he watches television; he does very limited grocery shopping; he tries to prepare his own meals; he attends weekly church services which last an hour; he reads cookbooks; he needs help changing his bed; he can sit for an hour, although it is difficult for him; and he can lift his cat, which weighs approximately ten to 12 pounds. (A.R. 48-49.)

The ALJ's reliance on Plaintiff's "daily activities," in general, is an improper basis to discredit Plaintiff's testimony. While the ALJ may look at Plaintiff's daily activities as a basis for determining whether Plaintiff can perform certain work, the ALJ's decision fails to demonstrate how Plaintiff's daily activities translate into the ability to be engaged in full-time work. *See* <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990)(daily activities may not be relied upon to support an adverse credibility decision where those activities do not affect the claimant's ability to perform appropriate work activities on

14

Case 5:03-cv-00181-MAN   Document 16   Filed 09/30/05   Page 15 of 17   Page ID #:32

an ongoing and daily basis). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722 (rejecting an adverse credibility finding premised on the claimant's ability to perform daily activities, when the level of activity was not inconsistent with her claimed limitations). "One does not need to be 'utterly incapacitated' in order to be disabled," and the ability to perform normal daily activities outside of the work setting does not detract from a claimant's "overall credibility." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).

Furthermore, the ALJ's reliance on Plaintiff's "minimal need for treatment" was an improper basis to reject Plaintiff's credibility. Indeed, the record shows that Plaintiff discontinued certain treatment due to his inability to afford such treatment. (A.R. 44 -- Plaintiff's testimony that he discontinued physical therapy and chiropractic treatment and thereafter performed home therapy because he had no money to pay for these treatments; 215 -- February 10, 2000 progress notes stating that Plaintiff "can't go [to physical therapy] because he ran out of money.") Clearly, Plaintiff has not been regularly employed and consequently may not have had the finances to seek more aggressive treatment. *See* Gamble v. Chater, 68 F.3d 319, 320-22 (9th Cir. 1995)(failure to obtain treatment, even if the alleged condition is remediable, is not a sufficient reason to deny benefits where the claimant suffers from financial hardships)(quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1985)("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.")); Social

Security Ruling 82-59 (a person who otherwise meets the disability criteria may not be denied benefits for failing to obtain treatment that he cannot afford). *See also* Smolen, 80 F.3d at 1284 (claimant's inability to pay for medication provided a valid reason for her failure to obtain medication).

Accordingly, on remand, the ALJ must provide reasons, if they exist, for rejecting the testimony of Plaintiff in accordance with the governing legal standards.

**C.  Further Testimony From A Vocational Expert May Be Necessary On Remand.**

Because the findings regarding Plaintiff's physical limitations must be reevaluated on remand, Plaintiff's ultimate residual functional capacity assessment may change. An ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations, such as postural or non-exertional limitations. *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert). If the vocational expert's testimony is not based on a claimant's complete set of limitations, then it has no evidentiary value. *See* Embrey v. Bowen, 849 F.2d 418, 422-24 (9th Cir. 1987)(in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations). Therefore, the Court does not reach the issue raised by Plaintiff that the ALJ improperly found that Plaintiff could perform his past relevant work as a clerical worker and accountant without the need for a vocational expert's testimony, as the finding

regarding Plaintiff's residual functional capacity must be reassessed and testimony from a vocational expert may be required.

**D.  Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors.  *See* McAllister, 888 F.2d at 603 (remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 30, 2005

                                        /s/
                            MARGARET A. NAGLE
                      UNITED STATES MAGISTRATE JUDGE